## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2019, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Cara Schaefer Wieneke<br>Wieneke Law Office, LLC<br>Brooklyn, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Evan Matthew Comer<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Howard D. Strickland,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | November 15, 2019<br><br>Court of Appeals Case No.<br>19A-CR-921<br><br>Appeal from the Clay Superior Court<br><br>The Honorable J. Blaine Akers, Senior Judge<br><br>Trial Court Cause Nos.<br>11D01-1609-F5-764<br>11D01-1902-F5-157 |

**Brown, Judge.**

[1]   Howard D. Strickland appeals the trial court's restitution orders.  We remand.

## Facts and Procedural History

[2]   In September 2017, Strickland pled guilty to possession of chemical reagents or precursors as a level 6 felony and was sentenced to two years with one year suspended to probation under cause number 11D01-1609-F5-764 ("Cause No. 764").  In February 2019, Strickland pled guilty to burglary as a level 5 felony, two counts of theft as level 6 felonies, and criminal mischief as a class B misdemeanor under cause 11D01-1902-F5-157 ("Cause No. 157") and admitted to violating his probation in Cause No. 764 by using methamphetamine, failing to report for drug screens, and failing to pay fees.  According to the probable cause affidavit in Cause No. 157, Jason Hofmann discovered that his barn door had been forced open and certain property belonging to him and Diana LaFollette was missing, and law enforcement identified Strickland based on information obtained from a security camera.  The probable cause affidavit stated that law enforcement interviewed Strickland and included the following:

> [Strickland] walked with me, and the other deputies, and was cooperative in the matter.  [He] pointed out several items inside his garage that were not his and that were taken from the pole building during the burglary.  Those items included . . . .
>
> [Hofmann] identified several of the items surrendered by [Strickland] including the large red Craftsman air compressor, several batteries, battery cables, a DeWalt drill, DeWalt battery chargers, DeWalt drill bags, a DeWalt battery operated reciprocating saw, an air tank, two (2) ohm/amp meters, several auto light kits, a box of auto clamps, a box of pins/fasteners, two (2) containers of drill bits, a bundle of clamps a small black refrigerator, two (2) red handled pliers/cutters, a black plastic tool box containing

miscellaneous tools, and other miscellaneous tools. . . . [Hofmann] stated several of the items surrendered by [Strickland] were not his, including . . . . The items [Hofmann] identified as his were released to [him].

Appellant's Appendix Volume 2 at 11.

[3] According to the probable cause affidavit, Hofmann completed a written statement which provided:

> Things that were stolen wastwo [sic] air compressorsone [sic] red one black 25 gal. on wheels, torch set in a red case, tool seat on wheels with two drawers black in box, dewalt weedeater 20 volt, dewalt circle saw 60 voltstill [sic] in box, dewalt inch impact 20 volt in box, 2 dewalt drills 20 volt, dewalt saw 20 volt, dewaltflashlight [sic] 20 volt, dewalthedge [sic] trimmer 60 volt, dewaltleaf [sic] blower 20 volts still in box, dewaltcarry [sic] bag, miscellaneous screwdrivers, wrenches, pliers, adjustable wrenches, 8 solar batteries, 186 piece socket set in black case, aluminum angle 5ft length, apartment refrigerator black, dewaltangle [sic] grinder 20 volts, 10,000 watt inverter, 12 volt winch, 8 piece security door alarms, tote boxes full of semi lights led, magnetic parts trays, lawnmower keys for a husqvarnoon [sic] white keychain, Craftsman electric pressure washer, bags and containers of new bolts, nuts, washers. Sheriff Switzer called me Feb 15 said they arrested two of the people, and had some of my things. He brought back one dewaltdrill [sic], dewaltgrinder [sic], 4 solar batteries, empty tool box, 20 voltdewalt [sic] saw, battery cables, some semi led lights, one red air compressor, drill bit, some torch ends, apartment refrigerator.

*Id.* at 12. LaFollette completed a written statement which provided:

> What I have missing that I can remember is: 5 pc. Neiko locking pliers, 22 pc. Neiko screwdriver, adjustable wrenches (5 or 6 of them) made by Neiko, 45 pc. SAE tap and die, Neiko 45 pc met tap and die set, Neiko 12 pc. punch and chisel (pouch), 24 oz framing hammer, 5 pc. Ball pein hammer set, 11 pc. 1/2" imp socket sae, 11 pc. 1/2" imp socket metric, 11 pc. deep impact socket sae, These were bought at Big State Industrial Supply . . . My business Invoice # 1305098 Shipped 9-26-18 . . . .

*Id*. at 11-12.

[4] Strickland's probation officer submitted a presentence investigation report which referenced attached statements provided by the victims. Hofmann's statement provided in part "I am still missing $2,785.00 worth of tools plus the $925.00 damage on building." *Id*. at 41. LaFollette's statement provided in part: "I had tooles [sic] in there that were hardly used. Some of them had never been used yet. I had $1,813.99 taken from the barn. These are tooles [sic] that can not purchase in stores. . . . These tools are not even a year old." *Id*. at 42.

[5] In March 2019, the court held a consolidated hearing under Cause Nos. 764 and 157. Under Cause No. 764, the court revoked Strickland's probation and reinstated his previously-suspended sentence. Under Cause No. 157, the court sentenced him to an aggregate term of four years consecutive to the sentence under Cause No. 764. The court stated "I don't think the prosecutor made an actual record of the amount . . . of restitution," the prosecutor stated that he had the amount and provided figures of $3,710 for Hofmann and $1,813.99 for LaFollette, and the court issued orders of restitution reflecting those amounts. Transcript Volume II at 88.

## Discussion

[6] Strickland contends the State failed to present sufficient evidence to support the restitution orders and the prosecutor merely recited the unsworn and unverified amounts provided by the victims. He notes that the victims' statements did not include receipts, estimates, or other proof of actual loss and argues that the

record is unclear whether the amounts were estimates of all property stolen or just that which was not returned to the victims. He also argues there was no proof of the cost to repair or replace the barn door. The State asserts the court could estimate the victims' loss and points to their letters and the probable cause affidavit. It also argues that, even if this Court finds the evidence was inadequate to support the restitution orders, the appropriate remedy is to remand for a hearing to determine the losses incurred by the victims.

[7] Ind. Code § 35-50-5-3 governs restitution and provides in part that the court shall base its restitution order upon a consideration of "property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)." We review restitution orders for an abuse of discretion. *See Kimbrough v. State*, 911 N.E.2d 621, 639 (Ind. Ct. App. 2009). The amount of restitution must reflect the actual loss incurred by the victim. *Id*. The amount of actual loss is a factual matter which can be determined only upon the presentation of evidence. *Kellett v. State*, 716 N.E.2d 975, 980 (Ind. Ct. App. 1999). The evidence supporting a restitution order must afford a reasonable basis for estimating loss and must not subject the trier of fact to mere speculation or conjecture. *See S.G. v. State*, 956 N.E.2d 668, 683-684 (Ind. Ct. App. 2011) (citation omitted).

[8] In this case, there is insufficient evidence in the record to support the trial court's restitution orders. Although the probable cause affidavit identified property taken from the barn, it did not include proof of values and indicated that certain property discovered in Strickland's possession was released to

Hofmann. The affidavit did not provide a reasonable basis upon which to estimate the actual loss incurred. The State does not point to evidence or testimony regarding the value of the property which was stolen and not returned or the cost to repair the damage to the barn door.

[9] For the foregoing reasons, we remand for a determination of damages. *See Smith v. State*, 471 N.E.2d 1245, 1248-1249 (Ind. Ct. App. 1984) (holding the evidence was insufficient to support the court's restitution order under Ind. Code § 35-50-5-3 and remanding for a determination based upon evidence), *reh'g denied*, *trans. denied*.

[10] Remanded.

Altice, J., and Tavitas, J., concur.